HENNINGSON, DURHAM & RICHARDSON, INC., Appellant,

v.

SWIFT BROTHERS CONSTRUCTION COMPANY and Egger Steel Company, Appellees.

No. 83–2448–SD.

United States Court of Appeals, Eighth Circuit.

Argued April 13, 1984.

Decided July 25, 1984.

Harold C. Doyle, John A. Hurley, May, Johnson, Doyle & Becker, P.C., Sioux Falls, S.D., for appellant.

Steven W. Sanford, Cadwell, Sanford & Deibert, Sioux Falls, S.D., for appellee Swift Bros. Const. Co.

Michael L. Luce, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for appellee Egger Steel Co.

Before LAY, Chief Judge, FAIRCHILD, Senior Circuit Judge,[*] and McMILLIAN, Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

In *Jaeger v. Henningson, Durham & Richardson, Inc.*, 714 F.2d 773 (8th Cir. 1983), this court upheld a jury verdict in favor of two workmen for injuries received in a construction project accident. The defendant in that action, the architectural firm Henningson, Durham & Richardson (HDR), subsequently filed suit in district court seeking indemnity or contribution from the construction project general contractor, Swift Brothers, and a subcontractor, Egger Steel.[1] The district court granted summary judgment in favor of both defendants holding that (1) South Dakota law precludes contractual indemnity; (2) prior adjudication of HDR's negligence precludes common law indemnity; and (3) state workers' compensation law bars contribution. The court also denied HDR leave to amend its complaint to add counts for breach of express contract and express warranty, negligent misrepresentation, and equitable estoppel, finding these additional claims would not alter the result.

On appeal, HDR argues the district court erred in rejecting its claims for indemnity and in denying leave to amend its complaint. HDR does not dispute the district court's rejection of its claim for contribution. *See Parker v. Stetson-Ross Mach. Co. Inc.*, 427 F.Supp. 249, 251 (D.S.D.1977) (no right of contribution from employer protected from direct suit by the workers' compensation statute because there is no common liability of employer and other person whose fault caused injury). We affirm the judgment of the district court.

### I.

The following is a brief recounting of the facts leading to the present dispute viewed in a light most favorable to HDR.[2]

In February 1977 HDR entered into a contract with an insurance company (Owner) to prepare drawings and specifi-

[*] Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Jurisdiction is founded on diversity. The parties have treated South Dakota law as governing substantive issues.

2. This factual rendition is consistent with materials submitted to the district court by both sides, with plaintiff's brief to this court, and with this court's earlier account in *Jaeger* HDR contends on appeal that the grant of summary judgment was inappropriate because disputed facts present genuine issues for trial. But HDR failed to submit to the district court a list of disputed facts as required by the court under the local rule. In its opening brief on appeal, HDR asserts generally the existence of genuine issues of material fact, but does not suggest what they may be. In its reply brief, HDR sets forth seven propositions which it characterizes as "specific facts." Defendants may well disagree in whole or in part with those propositions. Insofar as these propositions are really assertions of fact, they are not material in the light of the legal analysis followed by the district court and ourselves. Putting it another way, assuming the factual assertions to be correct, e.g., that "Defendants failed to notify HDR in writing, of the deviations contained in the Shop Drawing," the outcome is not changed.

cations for construction of an office building in Sioux Falls, South Dakota. Under the contract HDR was also required to "review and approve shop drawings ... only for conformance with the design concept of the Project and for compliance with the information given in the [specifications, blueprints and drawings]." (Agreement Between Owner and Architect ¶ 1.1.18.)

Among the materials prepared by HDR were specifications for a stairway with 10-gauge steel landing pans and angle supports. These and other specifications were submitted to Egger Steel for preparation of detailed shop drawings. Contrary to HDR's specifications, the shop drawing for the landing pans called for 14-gauge steel and failed to specify angle supports. HDR approved this shop drawing with the stamp "furnish as noted" and the following statement:

> This review is for general conformance with design concept only. Any deviation from plans or specifications not clearly noted by the contractor has not been reviewed. Review shall not constitute a complete check of all detailed dimensions or count or serve to relieve the contractor of contractual responsibility for any error or deviation from contract requirements.

Egger did not notify HDR that the shop drawing deviated from the specifications.

Egger fabricated the stairs in accordance with the approved drawing. The 14-gauge steel landing pan was delivered to the job site and placed in its framework. The landing pan collapsed, seriously injuring two workmen.

The workmen successfully sued HDR alleging that the architectural firm "negligently failed to detect and correct the shop drawings providing for a 14-gauge steel stairway landing pan." 714 F.2d at 775. HDR now seeks indemnity from Swift Brothers and Egger for failing to prepare the drawing in accordance with the specifi-

cations and failing to give notice that the shop drawing deviated from the specifications.

## II.

■ HDR asserts that Swift Brothers is obligated to reimburse HDR for damages paid the two workmen by the indemnification section of the General Conditions of the Contract for Construction ¶ 4.18.[3] Subparagraph 4.18.1 provides in part that, "[t]o the full extent permitted by law, the Contractor shall indemnify and hold harmless ... the Architect ... from and against all claims [or] damages ... arising out of or resulting from the performance of the Work ... caused in whole or in part by any negligent act or omission of the Contractor [or] any Subcontractor." Assuming subcontractor Egger Steel's departure from specifications without notice to HDR constitutes a "negligent act or omission," subparagraph 4.18.1 would appear to require indemnity for HDR's resulting liability.

But the reach of 4.18.1 is limited by subparagraph 4.18.3 which provides:

> *The obligations of the Contractor under this Paragraph 4.18 shall not extend to the liability of the Architect,* his agents or employees, *arising out of* (1) *the* preparation or *approval of* maps, *drawings,* opinions, reports, surveys, change orders, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the Architects, his agents or employees provided such giving or failure to give is the primary cause of the injury or damage.

(Emphasis added.) The inclusion of this language is mandated by South Dakota statute, S.D. Codified Laws Ann. § 56–3–16 (1980). South Dakota statutes further provide that "[a]ny indemnification provision in a construction contract in conflict with § 56–3–16 shall be unlawful and unenforceable." S.D. Codified Laws Ann. § 56–3–17 (1980).

HDR seeks enforcement of the General Conditions as third-party beneficiary. It is not entirely clear to what extent and on what basis HDR asserts a contractual claim against Egger.

---

**3.** The General Conditions of the Contract for Construction were incorporated into the agreement executed by the owner of the Sioux Falls office building and general contractor Swift.

In *Jaeger*, this court analyzed the issues and affirmed the judgment against HDR. The opinion makes it plain that liability was based on HDR's contractual duty to review and approve shop drawings for conformity with the specifications and its approval of drawings in breach of that duty. 714 F.2d at 775–76. It clearly follows that the liability arose out of "approval of . . . drawings" as the terms are used in the indemnity provision and statute. We are not persuaded by HDR's attempt to establish that these terms are inapplicable.[4] Accordingly, HDR's claim for contractual indemnity is barred by § 56–3–16 and subparagraph 4.18.3.

HDR sought to avoid the limitation of the contract's indemnity provision and the South Dakota statute by amending its complaint to include claims for breach of express contract and express warranty and for equitable estoppel.

The express contract claim alleged that defendants' failures to prepare proper shop drawings, to inform HDR of deviations in the drawings, to obtain HDR's approval of such deviations, and to perform the work in accordance with the contract documents were breaches of the contract between the Owner and Swift, enforcible by HDR as beneficiary. The recovery sought was the amount of the judgments against HDR and expenses in defense. The breaches alleged were the same failures originally alleged as negligence.

The express warranty claim alleged that furnishing the noncomplying shop drawing was a breach of a warranty contained in the same contract, and asked the same recovery.

■ As suggested by the district court in denying leave to amend, the claims for breach of contract and warranty were, in this context, undistinguishable from the originally pleaded claim for contractual indemnity. Whatever the result of enforcement of the contractual provisions by HDR in other contexts, they are, when used to obtain indemnity here, in conflict with the exclusion from indemnity required by statute.

■ The equitable estoppel claim, that defendants were estopped by their alleged failures from relying on the statutory and contractual exclusions from indemnity, is similarly devoid of new grounds for relief. The claim simply attempts to recast in equity facts already found insufficient. The district court properly denied leave to amend.

### III.

■ HDR also claims the right to indemnity from Swift Brothers and Egger Steel based on South Dakota common law. South Dakota common law does not preclude indemnity between joint tortfeasors but "the situations in which indemnity is

**4.** A principal issue in *Jaeger* was whether expert testimony was required to assist the jury in deciding HDR's possible liability. In answering that question the court explained that "[t]he gravamen of the complaints here is that HDR negligently failed to supervise the shop drawings pursuant to the contract . . . . Accordingly, we determine that the actions before us are negligence-in-supervision actions and that expert testimony . . . was not required." 714 F.2d at 776. The *Jaeger* court characterized the actions against HDR as "negligence-in-supervision" actions in contrast to actions based on architectural "negligence-in-preparation" that would require expert testimony. *See Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir.1980).

HDR seizes upon this characterization to argue that its liability did not arise out of approval of drawings. It appears to argue that approval of drawings requires the same architectural expertise as preparation of plans and drawings, and therefore an action to establish liability arising out of approval must be treated as a "negligence-in-preparation" action and not a "negligence-in-supervision" action. It would then follow from a decision that the action under consideration in *Jaeger* was a "negligence-in-supervision" action that the liability determined could not be a liability arising out of approval of drawings. But this argument seems to fly in the face of the holding of *Jaeger*, as well as the ordinary meaning of the language employed. Moreover, any argument that liability for negligence in supervision is never excluded from indemnity must fail because of § 56–3–16, requiring exclusion of liability arising out of "the giving of or the failure to give directions or instructions" where such giving or failure is the primary cause of the injury. We are not persuaded.

allowed are exceptional and limited." *Ebert v. Fort Pierre Moose Lodge # 1813*, 312 N.W.2d 119, 123 (S.D.1981).

In *Degen v. Bayman*, 86 S.D. 598, 200 N.W.2d 134 (1972), the Supreme Court of South Dakota held that a defendant whose "negligence was more than passive or vicarious" was not entitled to indemnity from his codefendant. Although the court recognized that indemnity was proper under some circumstances, it went on to say that "[i]f a person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act of omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he has undertaken, he is deprived of the right of indemnity." *Degen*, 200 N.W.2d at 137. As the Supreme Court explained this rule is consistent with the view that "before a joint tortfeasor can shift one hundred percent of the recovery upon another joint tortfeasor, he must show a proportionate absence of contributory negligence on his part." *Id.* Accordingly, "where each is chargeable with active or affirmative negligence contributing to the injury, neither is entitled to indemnity from the other." *Id.*

■ Viewing the negligence of the joint tort-feasors in the present case, it is readily apparent that as between HDR and Swift no difference relevant to indemnity exists. Swift's negligence, if any, was its failure like HDR to discover deviations in the shop drawings prepared by Egger Steel.

Egger Steel's negligence was somewhat different in content from HDR's: Egger prepared the non-conforming drawings and failed to notify HDR of the deviations; HDR failed to detect the deviations. Nevertheless, each failed to perform an affirmative duty undertaken by contract.

In order to recover indemnity consistent with *Degen* HDR must establish that its negligence was "passive" as compared with Egger's "active" negligence. "An act of omission as well as one of commission on the part of a joint tortfeasor contributing to the injury may constitute active negligence precluding ... recovery of indemnity

where ... under an affirmative duty to act." *Degen*, 200 N.W.2d at 137. HDR contracted "to review and approve shop drawings ... for compliance with the information given in the [the specifications]." HDR's stamp of approval on the relevant shop drawings expressly denied making such a review. This was an omission of an affirmative duty and resulted in a determination of liability against HDR in the earlier litigation. This omission constitutes active negligence barring indemnity from HDR's joint tort-feasors.

HDR seeks to avoid this conclusion by relying on one of five exceptions (situations) recognized in *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960). HDR contends the exception ("Rule or situation (4)") was adopted by the Supreme Court of South Dakota, and remains viable in South Dakota, although repudiated in Minnesota. As stated in *Hendrickson*, Rule (4) provides that "[a] joint tortfeasor may generally recover indemnity only ... [w]here the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged." *Id.* at 372, 104 N.W.2d at 848.

In *Degen*, the North Dakota Supreme Court cited *Hendrickson* in support of the proposition that "indemnity is proper where one party has a greater liability or duty which justly requires him to bear the whole of the burden as between the parties." 200 N.W.2d at 136. The court did not quote or paraphrase the situations described in *Hendrickson*. Immediately following the citation of *Hendrickson*, the court quoted a description of indemnity which referred to the indemnitee as one "without fault on his own part" and one who "has only an imputed or vicarious liability." Several similar quotations followed. *Id.* at 136–37 (quoting Prosser, Law of Torts 250 (2d ed. 1955)). The tension between the "even though negligent" language of Rule (4) and the analysis and holding of *Degen* is obvious.

Rule (4) of *Hendrickson,* allowing indemnity, was overruled by the Supreme Court of Minnesota in favor of contribution, *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977), noting that Rule (4) "shifts the entire loss from one culpable wrongdoer to another." *Id.* at 367 (footnote omitted).

In *Ebert,* the Supreme Court of South Dakota stated that "[i]n *Degen,* this Court adopted the viewpoint of the Minnesota Supreme Court as espoused in *Hendrickson.*" 312 N.W.2d at 123. The court found that situation (3) of *Hendrickson* was applicable to the case before it and reversed a denial of indemnity. Although the *Ebert* opinion "Summarized" the situations in which *Hendrickson* allowed indemnity, and included situation (4) as "failure to discover negligence of another," it omitted the "even though negligent" language of the original. *Id.* The court did not refer to the 1977 decision of the Minnesota Supreme Court in *Tolbert* overruling Rule or situation (4).

■ HDR cites no South Dakota decision applying or analyzing Rule (4) of *Hendrickson.* Whatever the extent of the adoption or survival of Rule (4) in the law of South Dakota, we conclude that it has no application to HDR's situation here, where HDR has been found liable for negligent failure to perform a duty it undertook by its contract. It may well be unfortunate for HDR that because of the effect of the workers' compensation law it is unable to recover contribution in proportion to comparative fault, but that in itself is no reason to conclude that South Dakota courts would award indemnity.

■ HDR's amended complaint would have added a claim seeking the amounts of the judgments against it and expenses of defense by reason of defendants' negligence in failing to inform HDR of the deviation, to obtain HDR's approval, to use reasonable care in the preparation of shop drawings, and in misrepresenting the conformity of the drawings. The new claim added nothing of substance to the claim for common law indemnity, and could produce no different result. Denial of leave to amend was proper.

The judgment is **AFFIRMED.**